IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,<br><br>              *Plaintiff*,<br><br>v.<br><br>NORTHERN REGIONAL POLICE DEPARTMENT OF ALLEGHENY COUNTY, *et al*,<br><br>              *Defendants* | Civil Action No. 2:22-cv-1628<br><br>Hon. William S. Stickman IV<br><br>**UNDER SEAL** |

**SEALED MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Jane Doe commenced this action under 42 U.S.C. § 1983 to address purported violations of her constitutional rights arising from an incident with a male student, A.M., during the school day at Pine-Richland High School. She contends that due to the "shoddy, unprofessional, and inadequate investigation" undertaken by Defendants, A.M. was never prosecuted. (ECF No. 12, p. 1). Plaintiff voluntarily dismissed Defendants Township of Pine, Marshall Township, Township of Richland, Borough of Bradford Woods, and Joint Police Board of the Northern Regional Police Department of Allegheny County. (ECF No. 28). The remaining Defendants, Northern Regional Police Department of Allegheny County and Detective Scott Rick ("Detective Rick") filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) ("motion"). (ECF No. 22). For the following reasons, the Court will grant the motion, but Plaintiff will be permitted one last amendment.

1

## I.    FACTUAL BACKGROUND

During the school day of January 7, 2019, Plaintiff, a "Latinx female," who was born in Guatemala and identifies as "Mayan/Native (Central) American," and "is of Hispanic origin," contends that she was "secluded" "in a school restroom where, ignoring her pleas to stop and physical resistance, [A.M.] restrained her, vaginally raped her with his penis, finger and tongue, forced her to perform oral sex, and attempted to anally rape her." (ECF No. 12, pp. 2-3, 11). She reported the incident to Pine-Richland High School personnel,[1] law enforcement, and medical personnel that day.[2] (*Id.* at 3). As to her report to law enforcement, Plaintiff gave a videorecorded statement to Detective Rick, a white male, at the Northern Regional Police Department in the presence of her mother. (*Id.* at 2-3).

On March 7, 2019, Detective Rick notified Plaintiff's mother that the Allegheny County District Attorney's Office decided not to prosecute A.M. (*Id.* at 6). During a telephone meeting with the prosecutor the next day, Plaintiff "told [the prosecutor] about the many offenses A.M. had committed," and the prosecutor "chastised [Plaintiff], stating 'you are changing your story!'" (*Id.* at 6-7). Plaintiff faults Detective Rick for conducting an "incomplete and inadequate investigation." (*Id.* at 10). She alleges that Detective Rick "committed multiple deliberate, premeditated acts to prevent the Allegheny County District Attorney from reviewing [her]

---

[1] Before her parents arrived, Plaintiff began to provide school officials with a handwritten statement. When her parents arrived, she was directed to stop writing. Therefore, Plaintiff's statement was "unfinished" and "incomplete." According to Plaintiff, it "did not include the multiple additional forced penetration offenses that occurred, the multiple acts of indecent assault and sexual assault that occurred, or [her] attempts to escape." Her statement, which only described two of the five acts of forcible penetration committed against her, was given to Detective Rick by school personnel. (*Id.* at 5-6).

[2] That evening, Plaintiff gave a statement to medical personnel at the hospital. Three months later, she gave another statement in connection with a Sexual Violence Protection Order she obtained against A.M. (*Id.* at 3).

complete statement, and instead provided substantially altered versions of her statement that he knew did not represent true, complete narrative [...]." (*Id.* at 4). She takes issue with her "unfinished" and "incomplete" January 7, 2019 handwritten statement that was provided to school personnel becoming "an essential part of the criminal investigation materials presented to the Allegheny County District Attorney's office." (*Id.* at 6). She faults Detective Rick for conveying to the prosecutor that she had a boyfriend at the time of the assault with "the implication being that [Plaintiff] would make a false claim of rape to explain an event of consensual sex with someone other than her boyfriend." (*Id.* at 11). She also faults Detective Rick for never having her January 7, 2019 interview transcribed and giving a transcript to the prosecutor.[3] Furthermore, Plaintiff contends that Detective Rick failed to provide accurate information to the prosecutor, and that in his Incident Report he altered and/or omitted portions of her statement.[4] According to Plaintiff, Detective Rick deliberately misidentified her as "Caucasian/Non-Hispanic," in his Incident Report. (*Id.* at 7-9, 11).

Plaintiff asserts that Detective Rick's conduct weakened a case for prosecuting A.M., cast the encounter between her and A.M. as consensual, and created a credibility bias towards her. (*Id.* at 7-9). She posits that Detective Rick's "actions were motivated in part by his desire to protect the reputation" of the Pine-Richland School District as well as the reputation of A.M., who was a member of the high school football team. (*Id.* at 12).

---

[3] Plaintiff alleges that two months after the Allegheny County District Attorney's Office closed its investigation, it still had not received a copy of her January 7, 2019 interview or a transcript of the interview. (*Id.* at 5).

[4] Plaintiff asserts that Detective Rick omitted from the narrative elements the elements of forcible compulsion, her attempts to escape, and that anal penetration was attempted. She contends that Detective Rick failed to characterize the violent nature of the incident and to note the difference in size, strength, and power between her and A.M. Additionally, she maintains that Detective Rick "mischaracterized" her family's refusal to surrender her cellphone. (*Id.* at 5).

3

As to the Northern Regional Police Department of Allegheny County, Plaintiff contends that it had a long-standing custom and policy of granting discretion to detectives conducting investigations of potential sex crimes. She further contends that it abdicated its responsibility to train, monitor and supervise detectives to ensure that their actions did not violate the rights of sex crime victims, comported with "best practices" free from bias, were free from prejudice (or favor for a potential defendant), and that decisions to recommend prosecution were based on evidence and free from outside influence. (*Id*. at 13-14).

## II.     STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is

present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

#### A. Federal claims

Plaintiff's two § 1983 claims (Counts I and II) invoke different causes of action under the Fourteenth Amendment. Section 1983, enacted as part of the Civil Rights Act of 1871, establishes "a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights." *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (quotations omitted). To obtain relief under § 1983, Plaintiff must make a two-prong showing: (1) that she suffered a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted). For the following reasons, Plaintiff has failed to adequately plead that she suffered a violation of a constitutional right.

##### i.    *Count 1 – Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff's claim is not based on some general constitutional right to have A.M. arrested and criminally charged. That is because a private citizen does not have a legal right to compel government officials to arrest or prosecute another person. *Town of Castle Rock,*

*Colorado v. Gonzales*, 545 U.S. 748, 767 n.13 (2005) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.")); *see also Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (an allegation that authorities failed to investigate and solve a crime, "without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotation omitted)); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("[Plaintiff] has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). And it is not enough for Plaintiff to allege that Detective Rick exercised discretionary investigatory authority in an individualized manner. A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion. In *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591 (2008), the Supreme Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself—the decision to ticket speeders under such circumstances. Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason,

6

> would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Engquist*, 553 U.S. at 603–04.[5]

Plaintiff claims that Detective Rick's alleged racial bias against her clouded his investigation. There is a distinction between the right to force the prosecution of a case and the right of access to judicial procedures, like a criminal investigation, to redress an alleged wrong. It is certainly true that police officers cannot discriminate on the basis of an alleged victim's race. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."). The "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Thus, a claim that police services were administered in a discriminatory manner and denied a victim protection is a viable equal protection claim.

However, Plaintiff has failed to plead a plausible basis for a claim of alleged discriminatory failure to adequately investigate her complaint against A.M. based on her ethnicity or race. She had to set forth a plausible case-specific account of intentional

---

[5] While the issue in *Engquist* involved an equal protection claim in the context of a public employment action, this analysis has been applied to equal protection claims in other factual settings as well. For example, the United States Court of Appeals for the Ninth Circuit found that a victim of a traffic collision pleaded a colorable equal protection violation where she alleged that officers failed to arrest or even investigate the at-fault driver. *Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010). While the Ninth Circuit agreed that "individuals don't have a constitutional right to have police officers arrest others who have victimized them," *id.* at 1006, and that the "officers' discretion in deciding whom to arrest is certainly broad," that discretion "cannot be exercised in a racially discriminatory fashion." *Id.* The Ninth Circuit found that officers were not permitted to give the drunk driver a "pass" if the reason behind it was racial bias in favor of the driver and against the plaintiff. *Id.*

discrimination but merely pled the elements of an equal protection claim clothed in threadbare allegations of supporting fact.

25. Detective Rick deliberately misidentified Ms. Doe as "Caucasian/Non-Hispanic" because people of color are known to be more at risk for rape and it might reflect negatively on him if such an accusation were not followed up with criminal charges, which itself might invite a review to determine if a more thorough investigation should have been done. Ms. Doe was born in Guatemala; her race is Mayan/Native (Central) American and she is of Hispanic origin. Detective Rick never asked Ms. Doe's parents about her race or ethnicity, but from her appearance alone, with her dark skin and features, Ms. Doe clearly is not Caucasian. This apparent error could not have been the result of negligence or incompetence, particularly considering that Detective Rick clearly identified JROTC instructor Michael Gasparetto as "Hispanic" in his Incident Report and clearly identified the race and ethnicity of most other individuals mentioned in the report. Bias against Ms. Doe's ethnicity or race appears to be the only motive for Detective Rick's decision.

\* \* \*

37. Defendants intentionally treated Ms. Doe differently from other victims of rape and sexual assault with respect to the investigation of the crimes committed against her, and there was no rational basis for the difference in treatment.

38. Defendants intentionally and irrationally singled Ms. Doe out for dissimilar treatment.

39. Defendants' official acts in connection with the investigation of the rape and sexual assault committed against Ms. Doe were motivated by improper considerations and an illegitimate animus toward Ms. Doe.

40. Defendants deliberately sought to deprive Ms. Doe of the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution for reasons of a personal nature unrelated to their official duties.

41. There was no rational basis for the manner in which defendants investigated Ms. Doe's rape and sexual assault, and the decisions they made during the course of the investigation.

42. Defendants' selective adverse treatment of Ms. Doe was based on her race and other arbitrary factors.

43. During the investigation, defendants selected particular courses of action in part because of their adverse effects, specifically, that A.M. would not

>    be prosecuted and that Ms. Doe would suffer the emotional distress and related damages alleged above.
>
>    44.    Detective Rick's conduct violated clearly established constitutional and statutory rights of which a reasonable police officer would have known.
>
>    45.    It was objectively unreasonable for Detective Rick to believe that his actions were lawful during the period of the investigation of the rape and sexual assault committed against Ms. Doe.

(ECF No. 12, pp. 11, 14-15). All Plaintiff pled are vague and speculative "facts," and legal conclusions as to discrimination. It is not enough to merely plead accusations. A certain degree of factual specificity is required to support Plaintiff's claims. Plaintiff must plead enough details about the subject matter of her case to present a story that holds together and that supports her accusations with a basis in plausible, articulable facts.

Proof of discriminatory intent or purpose is required to demonstrate an ethnicity or race-based violation of the equal protection clause. Thus, Plaintiff had to demonstrate discriminatory intent in her Amended Complaint but it is bereft of facts regarding exactly how Plaintiff was targeted or intentionally treated differently during the police investigation than other sexual assault victims on account of her ethnicity or race. She has identified no comparative cases and has failed to come forth with any specific facts as to how the alleged inadequacies in the investigation were based on her ethnicity or race. There is no indication that Defendants ever stated that they would not adequately investigate Plaintiff's allegations because they thought she was undeserving of equal law enforcement protection due to her ethnicity or race. No facts set forth in the Amended Complaint raise an inference that Defendants' investigatory decisions were motivated by discriminatory animus.

Law enforcement decisions are highly discretionary and oftentimes require an officer to assess multiple variables. As the Supreme Court noted in *Engquist*, "[i]t is no proper to

challenge what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist*, 553 U.S. at 604. Plaintiff's equal protection claim amounts to nothing more than a generic claim that Detective Rick's investigation was inadequate and, therefore, it must have been motivated by some unalleged personal animus toward her "ethnicity or race." Plaintiff does not have to prove her case in her complaint, but she cannot baldly plead that Detective Rick's allegedly faulty investigation was based on ethnicity or race and offer no concrete basis – beyond her own race – to reach that conclusion.

There is no right to an adequate police investigation and Defendants had no constitutional duty to conform their investigation to the dictates or desires of Plaintiff and her parents. *See e.g., Khaled v. Dearborn Heights Police Dep't*, 711 F. App'x 766 (6th Cir. 2017) (finding officer's alleged failure to adequately investigate allegation that neighbor assaulted Arab-American's daughters was not actionable in family's § 1983 action against officer, and finding that officer's alleged refusal to accept daughters' report of assault by their neighbor was not actionable as discrimination).[6] Plaintiff's equal protection claim is based solely on her own conclusory and unsupported allegations. She has failed to set forth facts showing that Defendants purposely failed to properly investigate her allegations against A.M. because of her ethnicity or race. The alleged misidentification of Plaintiff on one Incident Report as "Caucasian/Non-Hispanic" is insufficient to establish a plausible inference of Defendants' discriminatory intent. Because she

---

[6] The Allegheny County District Attorney's Office, for reasons not fully set forth in the Amended Complaint, decided not to file criminal charges against A.M. Plaintiff has not brought a claim against the Allegheny County District Attorney's Office that it lacked an ample basis for its decision not to prosecute or that its decision was discriminatory or arbitrary. In her Amended Complaint, Plaintiff has presented no facts that the ultimate decision by the prosecutor would have been different if Defendants allegedly had not treated her in a discriminatory fashion during the investigative process. Plaintiff's equal protection claim, based entirely on intermediate steps in the decision-making process, is dubious where the ultimate result is not alleged to be discriminatory.

has failed to state facts that constitute infringement of a protected right, Plaintiff does not have a cognizable § 1983 claim based on the failure to adequately investigate. Count I must be dismissed.

### ii. Count 2 – Due Process

The substantive due process clause of the Fourteenth Amendment protects certain individual liberty interests against "governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It protects against the arbitrary exercise of government power. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). To establish a substantive due process violation, a plaintiff must show the government official's conduct "shocks the conscience." *Id.* at 846; *see also Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994). "This standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." *Blain v. Twp. of Radnor*, 167 F. App'x 330 (3d Cir. 2006) (citing *Lewis*, 523 U.S. at 847 n. 8). What qualifies as conscience-shocking conduct depends upon the unique factual circumstances of each case. *Lewis*, 523 U.S. at 850. However, as the Supreme Court has explained:

> [W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–1161, 47 L.Ed.2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in *Daniels v. Williams*, 474 U.S., at 332 [ ], we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."

*Lewis*, 523 U.S. at 848.

11

The due process clause is primarily concerned with preventing government from abusing its power or employing it as an instrument of oppression. It is not generally used to impose affirmative obligations on government actors to provide aid to citizens or to provide citizens with a constitutionally guaranteed right to receive these services. *DeShaney*, 489 U.S. at 195–96. Because the due process clause does not guarantee a right to government aid, it does not generally provide a cause of action when that aid is rendered inadequately. While government officials may be legally required to investigate and prosecute crimes, the duty is performed for the benefit of the public generally and is not owed to any one member of the public individually.

Here, it is unclear what government action Plaintiff is alleging shocks the conscience to the point of being an actionable substantive due process claim. All she has pled is that: "Defendants' actions were an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience and violated Ms. Doe's right to substantive due process." (ECF No. 12, p. 16). She contends in response to Defendants' motion "that defendants' actions in conducting a rape and sexual assault investigation based on bias and prejudice 'shock the conscience,' regardless of whether a rape and sexual assault investigation free from bias and prejudice would or would not have resulted in prosecution of A.M." (ECF No. 26-2, p. 7). Plaintiff's conclusory assertions are devoid of any factual development and she fails to identify the basis for a substantive due process claim. As noted in the previous section, Plaintiff has come forth with no specific facts as to Defendants' "bias and prejudice." Without such facts, her allegations of negligence as to the police investigation – e.g., failing to follow up on additional leads, improperly identifying Plaintiff as "Caucasian/Non-Hispanic" on the Incident Report, not having Plaintiff's videorecorded interview transcribed – do not violate due process. There is simply no constitutional right to have an investigation by police conducted as one wishes.

The due process clause is primarily concerned with preventing government from abusing its power or employing it as an instrument of oppression. It is not generally used to impose affirmative obligations on government actors to provide aid to citizens or to provide citizens with a constitutionally guaranteed right to receive these services. *DeShaney*, 489 U.S. at 195–96. Because the due process clause does not guarantee a right to government aid, it does not generally provide a cause of action when that aid is rendered inadequately. While government officials may be legally required to investigate and prosecute crimes, the duty is performed for the benefit of the public generally and is not owed to any one member of the public individually.

Here, it is unclear what government action Plaintiff is alleging shocks the conscience to the point of being an actionable substantive due process claim. All she has pled is that: "Defendants' actions were an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience and violated Ms. Doe's right to substantive due process." (ECF No. 12, p. 16). She contends in response to Defendants' motion "that defendants' actions in conducting a rape and sexual assault investigation based on bias and prejudice 'shock the conscience,' regardless of whether a rape and sexual assault investigation free from bias and prejudice would or would not have resulted in prosecution of A.M." (ECF No. 26-2, p. 7). Plaintiff's conclusory assertions are devoid of any factual development and she fails to identify the basis for a substantive due process claim. As noted in the previous section, Plaintiff has come forth with no specific facts as to Defendants' "bias and prejudice." Without such facts, her allegations of negligence as to the police investigation – e.g., failing to follow up on additional leads, improperly identifying Plaintiff as "Caucasian/Non-Hispanic" on the Incident Report, not having Plaintiff's videorecorded interview transcribed – do not violate due process. There is simply no constitutional right to have an investigation by police conducted as one wishes.

Courts have repeatedly recognized that inadequate investigation is not sufficient to state a civil rights claim unless there is some other recognized constitutional right involved. Plaintiff has merely recast her equal protection claim as a substantive due process claim, which the Court will not countenance. Count II will be dismissed.

### iii. Monell liability

The liability of a municipality under § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A municipal entity, such as the Northern Regional Police Department of Allegheny County, cannot be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Id.* at 691. "[I]t is when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Municipal entities may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see id.*, (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

There must be a violation of Plaintiff's constitutional rights for a claim under *Monell* against the Northern Regional Police Department of Allegheny County to proceed. *Johnson v. City of Phila.*, 975 F.3d 394, 403 n.13 (3d Cir. 2020). As noted in the previous sections, Plaintiff has failed to allege a constitutional violation. Thus, her derivative *Monell* claim fails as a matter of law. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").[7]

The Court would further note that Plaintiff's conclusory allegations are insufficient to state a claim for municipal liability. She must assert more than the mere formulaic recitations of the existence of unlawful policies, practices, conducts, or habits. Her Amended Complaint is devoid of any allegations identifying a specific policy or custom of the Northern Regional Police Department of Allegheny County, any specific regulations, or any officially adopted or promulgated decisions, that the execution of which allegedly led to the "shoddy" police investigation about which Plaintiff is complaining. Plaintiff's claim, based on the investigation

---

[7] Additionally, it is questionable whether the Northern Regional Police Department of Allegheny County is a proper entity for municipal liability. It was formed in 2006 to facilitate and administer the provision of joint, cooperative police services through a single police department in and for the Township of Pine, Marshall Township, Borough of Bradford Woods, and Township of Richmond. Three elected officials from the Township of Pine, three elected officials from the Township of Richland, two elected officials from Marshall Township, and one elected official from the Borough of Bradford Woods "govern" the Northern Regional Police Department of Allegheny County. (ECF No. 12, p. 2). Section 1983 caselaw uniformly holds that the proper defendant is the municipality itself, not the division or subunit, and "police departments are administrative arms of local municipalities, not separate entities." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). *See also Chandler v. Sharon PD*, Civil Action No. 20-26, 2021 WL 753043, at *1 (W.D. Pa. Feb. 26, 2021) (dismissing police department as it was administrative arm of local municipality); *Santiago v. Warminster Twp.*, 629 F.3d 121, 126 (3d Cir. 2010) (acknowledging appropriateness of dismissing civil rights counts against a municipal police department "because it was not a separate legal entity from" the municipality). Plaintiff voluntarily dismissed the Township of Pine, Marshall Township, Township of Richland, Borough of Bradford Woods, and the Joint Police Board of Northern Regional Police Department of Allegheny County. (ECF No. 28).

of only her criminal complaint against A.M., is insufficient to establish that a policy or custom founded upon practices of sufficient duration, frequency, and consistency has become a traditional method of carrying out policy. To the extent Plaintiff's claim is based on an allegation that law enforcement personnel who investigate sexual assaults are untrained and fundamentally biased against sexual assault victims, her conclusory allegations are insufficient to plausibly show any actual deficiency in training reflecting a deliberate indifference to her constitutional rights. *See Harris*, 489 U.S. at 391 (explaining that allegations that "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" are insufficient to state a *Monell* claim based on failure to train). Plaintiff's *Monell* claim fails as a matter of law.

> iv.  *Further amendment*

The Court is mindful of the instruction that if a complaint is vulnerable to Rule 12(b)(6) dismissal, a plaintiff must be permitted a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Plaintiff has already amended her complaint once. Nevertheless, she asks "[t]o the extent the Court agrees with any of the arguments advanced by NRPD and Rick in the Motion to Dismiss, Ms. Doe requests leave for a reasonable period to submit a second amended complaint." (*Id.* at 14). Although the factual background has remained virtually unchanged from the Complaint (ECF No. 1-1, pp. 6-16) to the Amended Complaint (ECF No. 12, pp. 3-14), because the Court holds that Plaintiff's federal question claims should be dismissed for failing to plead sufficient factual bases to plausibly support the asserted claims, consistent with *Phillips*, the Court will permit her one last

amendment to set forth a viable federal civil rights basis for relief. Consequently, Counts I and II will be dismissed without prejudice.

**B. State law claims**

Plaintiff also brought state law claims for intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV). (ECF No. 12, pp. 16-17). Because the § 1983 claims, which are the sole basis for original jurisdiction, are being dismissed and due to the early stage of the proceedings, this Court will not exercise supplemental jurisdiction over the state law claims. *See Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 463 (W.D. Pa. 2007) (declining supplemental jurisdiction after dismissing the federal question claims for failure to state a claim). The state law claims are therefore not addressed on their merits herein. *See Abreu v. SCI Greene State Corr. Inst.*, No. 5:23-CV-01092, 2023 WL 2772136, at *8 (E.D. Pa. Apr. 4, 2023) (declining to examine merits of plaintiff's supplemental state law claims where the Court dismissed—with leave to amend—the plaintiff's claims under §1983).

## IV. CONCLUSION

For the forgoing reasons, the Court will grant Defendants' motion to dismiss. However, Plaintiff will be permitted to file a second amended complaint. Orders of Court will follow.

BY THE COURT:

*/s/ William S. Stickman IV*
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

7-21-2023
Dated