## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jane Doe                                              :
                                                      :        Docket No. 2:22-cv-01628-RJC
    vs                                            :
                                                      :        **Jury Trial Demanded**
Northern Regional Police Department of                :
Allegheny County and Detective Scott Rick  :

### *Second Amended Complaint*

Plaintiff, Jane Doe, hereby brings a series of claims against defendants, Northern Regional Police Department of Allegheny County and Detective Scott Rick, of which the following is a statement:

### *Jurisdiction and Venue*

1.      Ms. Doe brings this action for damages and equitable relief to redress defendants' violations of her civil and constitutional rights arising out of defendants' failure to properly investigate a rape and sexual assault committed against her during the school day when she was a minor by a male student, A.M., also a minor, at Pine-Richland High School.  In part based upon the shoddy, unprofessional, and inadequate investigation of the rape and sexual assault undertaken by the defendants, the Allegheny County District Attorney's Office failed to prosecute Ms. Doe's assailant.

2.      This Court has original jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331, this action being brought under 42 U.S.C. § 1983.  This Court may exercise supplemental jurisdiction over the state law claims assserted herein pursuant to 28 U.S.C. § 1367.

3.      Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b).

4.      The acts set forth in this Complaint were authorized, ordered, condoned, ratified, and/or done by officers, agents, employees and/or representatives of defendant Northern Regional Police Department of Allegheny County (NRPD),  and by officers, agents, employees and/or representatives of Township of Pine, Marshall Township, Township of Richland, Borough of Bradford Woods, and Joint Police Board of the NRPD, all while actively engaged in the management of defendants's business and pursuant to defendants's official policies, customs and practices.

### *Parties*

5.      Plaintiff, Jane Doe, is an adult Latinx female resident of this judicial district.  Ms. Doe achieved the age of majority, 18 years of age, in 2020.

6.      Defendant, Northern Regional Police Department of Allegheny County (NRPD), was formed in 2006 to facilitate and administer the provision of joint, cooperative police services through a single police department in and for the communities of Township of Pine, Marshall Township, Borough of Bradford Woods, and Township of Richland.  NRPD is governed by the Joint Police Board of the NRPD, which consists of three elected officials from the Township of Pine, three elected officials from the Township of Richland, two elected officials from Marshall Township, and one elected official from the Borough of Bradford Woods, and has a principal place of business at 230 Pearce Mill Road, Wexford, Pennsylvania. (NRPD and these entities hereinafter sometimes are collectively referred to as the "municipal defendants," as the context may require)

7.      Defendant, Detective Scott Rick, is and was at all times relevant hereto, a member of the NRPD and a White adult male resident of this judicial district.  He is sued in his official and individual capacities.

***Background Facts***

8.      This case concerns Detective Rick's intentional acts and omissions in connection

with the investigation of the January 7, 2019, brutal rape and sexual assault of Ms. Doe, a minor

at the time, by A. M., also a minor at the time, both of whom were students at the Pine-Richland

School District (PRSD) High School.

9.      A few months earlier, A.M. had been reported to the PRSD for sexually harassing

a female elementary school student.  In addition, several months after the attack on Ms. Doe,

Detective Rick had been informed about another incident involving A.M., where he repeatedly

sexually assaulted a female student on a school bus.  Consistent with Detective Rick's actions in

this case as described in detail below, and his apparent pattern of unjustifiably disbelieving

claims of sexual assault made by teenage girls, he falsely stated to the mother of the victim that

A.M. had pled guilty to a criminal charge less severe than assault, when in fact, Detective Rick

had never investigated the assault.  In fact, never even documented in an incident report the

sexual assault complaint filed by the victim's mother.  Thus, by intentionally misrepresenting

facts to the victim's mother and not documenting the sexual assault complaint, Detective Rick

again silenced another Pine-Richland female teenager and victim of sexual assault, and denied

her any form of investigation.

10.      On January 7, 2019, A.M. secluded Ms. Doe in a school restroom where, ignoring

her pleas to stop and physical resistance, he restrained her, vaginally raped her with his penis,

finger and tongue, forced her to perform oral sex, and attempted to anally rape her.  Ms. Doe was

3

finally able to escape, and she reported A.M.'s sexual violence to a close friend, the PRSD, law enforcement, and medical professionals that very same day.[1]

11.     Ms. Doe gave her complete statement about the rape and sexual assault on five occasions.  Three of those statements were given after Detective Rick closed his investigation. All of those statements were consistent in detailing how A.M. committed multiple acts of forcible indecent assault, sexual assault and rape against her in a locked unisex bathroom in the PRSD High School during the school day.  She gave her first statement verbally on January 7, 2019, the day of the assault, to Detective Rick at the NRPD police station in the presence of Ms. Doe's mother.  That statement was videorecorded.  She gave her second statement verbally the evening of January 7, 2019, to medical personnel at Children's Hospital of Pittsburgh of UPMC at Lawrenceville as part of the rape kit examination.  She gave her third statement several months later in connection with the Sexual Violence Protection Order (SVPO) she obtained against A.M.  She gave her fourth statement approximately one year after the attack, in writing, to Pine-Richland High School as part of her family's persistent efforts to get the PRSD to conduct a fair investigation into the assault.  She gave her fifth statement verbally in October 2021 to personnel with the Office of the District Attorney of Allegheny County (the Allegheny County District Attorney) at a meeting following the submission of new medical evidence relating to the assault.

12.     Despite the consistency in her investigation pre-closure statements, Detective Rick went to great lengths to do whatever he could to undermine Ms. Doe's credibility and protect A.M. from prosecution.  To achieve that objective, Detective Rick committed multiple

---

[1] On September 16, 2022, Ms. Doe filed suit against the PRSD alleging violations of federal and state law related to the January 7, 2019 rape and sexual assault.  *See Jane Doe v. Pine-Richland School District*, USDC, WD Pa, Civil Action No. 2:05-mc-02025.

deliberate, premeditated acts to prevent the Allegheny County District Attorney from reviewing Ms. Doe's complete statement, and instead provided substantially altered versions of her statement that he knew did not represent the true, complete narrative of the rape and sexual assault.

13.     In Detective Rick's written police report, he intentionally misrepresented the events Ms. Doe described to him in her videotaped NRPD interview conducted the day of the attack.  He omitted Ms. Doe's repeated actions of physical resistance, her repeatedly saying "No," and A.M. repeatedly telling Ms. Doe "No" each time she pleaded with him to let her go, despite the fact that she mentioned these events multiple times during the interview. Significantly, Detective Rick also substituted words which implied consent and failed to describe the true aggressive nature of A.M. during the attack.  In so doing, Detective Rick re-characterized the many forced acts of sexual violence and rape to appear to be consensual. Attached hereto as Exhibit A and made a part hereof is a table contrasting some of the statements made by Ms. Doe with Detective Rick's characterization of those statements in his written report.

14.     Detective Rick's failings with respect to the sexual assault investigation were numerous.  He committed multiple deliberate acts to conceal Ms. Doe's narrative of the rape and sexual assault and to alter the events, removing the elements of forcible compulsion that would have provided probable cause for the Allegheny County District Attorney to prosecute A.M. Detective Rick not only withheld Ms. Doe's complete and accurate statement from the Allegheny County District Attorney, but also in its place provided information he knew to be incomplete and at odds with the victim's complete statement.  After Ms. Doe's family became aware of this and informed the Allegheny County District Attorney, defendants then further

obstructed the District Attorney from timely viewing the victim's videorecorded interview by failing to provide either a useable electronic video file or a transcription of the police interview. In fact, more than two months after Detective Rick closed the investigation, the Allegheny County District Attorney's office still had not received either a transcript of the videorecorded interview or a useable electronic video file.

15. Perhaps most egregiously, in his written Incident Report to the Allegheny County District Attorney, as described in greater detail in paragraph 13, above, and Exhibit A, Detective Rick deliberately presented a severely altered interpretation of Ms. Doe's statement.  Detective Rick removed from the narrative the elements of forcible compulsion; he removed Ms. Doe's repeated attempts to escape from her attacker; he did not characterize the violent nature of the attacks; he omitted the attempted anal penetration; he failed to note the stark difference in physical size, strength and power between Ms. Doe and A.M.; he identified Ms. Doe as "white/non-Hispanic" when she clearly is neither; and he mischaracterized Ms. Doe's family declining to surrender her cellphone.

16. Detective Rick's investigation and reporting to the Allegheny County District Attorney was severely biased with the intention of protecting A.M. from prosecution.

a. Instead of providing Ms. Doe's detailed and complete statement of the rape and sexual assault of January 7, 2019, which she gave verbally at the NRPD police station the day of the attack, he submitted the unfinished, incomplete handwritten statement Ms. Doe began writing at the PRSD High School under the direction of school administrators, who insisted she begin writing it with neither law enforcement nor her parents present at the time. Ms. Doe never had the opportunity to finish writing that statement because these same school officials directed her to stop writing when her parents arrived.  They later gave that document to

Detective Rick.  Because she was directed to stop writing it, the unfinished, incomplete statement did not include the multiple additional forced penetration offenses that occurred, the multiple acts of indecent assault and sexual assault that occurred, or Ms. Doe's attempts to escape.  Nevertheless, Detective Rick represented to the Allegheny County District Attorney that the unfinished, incomplete statement was Ms. Doe's full and complete statement of the rape and sexual assault.

      b.      Detective Rick never provided a copy of the unfinished, incomplete statement to Ms. Doe's parents.  Months later, they obtained it from the PRSD after learning that Detective Rick had presented it to Assistant District Attorney Meghan Black as representing Ms. Doe's complete official statement of the sexual assault.

      c.      Defendants intentionally failed to provide to the Allegheny County District Attorney's office either a transcript or a useable video recording of the full interview Detective Rick had with Ms. Doe on January 7, 2019.  Significantly, the unfinished, incomplete statement only described two of the five acts of forcible penetration against Ms. Doe.

      d.      Although NRPD personnel later admitted to Ms. Doe's parents that they would never interview a minor or ask for a statement without their parents present, and seemed surprised that the PRSD would do so, solely due to the actions of defendants, the unfinished, incomplete statement became an essential part of the criminal investigation materials presented to the Allegheny County District Attorney's office.

      17.      On March 7, 2019, two (2) months after the attack, Detective Rick called Ms. Doe's mother to inform her that the Allegheny County District Attorney's office had decided not to prosecute A.M. The next day, Ms. Doe and her parents had a telephone conference with Assistant District Attorney Black, during which Ms. Doe told Ms. Black about the many offenses

A.M. had committed.  It was clear to the Doe family that Ms. Black was hearing much of this information for the first time.  However, rather than thanking Ms. Doe for providing her all relevant facts, Ms. Black immediately chastised Ms. Doe, stating "you are changing your story!"  It was apparent during the telephone conference that Ms. Black's knowledge of what transpired in the bathroom was based solely on the unfinished, incomplete statement.  Ms. Black had no knowledge of the many additional events that Ms. Doe had related to Detective Rick in the January 7, 2019 interview, and it became clear that Detective Rick had not provided an accurate account of the verbal interview to Ms. Black.

18.    Detective Rick's act of providing the unfinished, incomplete statement to the Allegheny County District Attorney's Office as Ms. Doe's complete written statement of the rape and sexual assault caused  the Allegheny County District Attorney's office to discount and discredit Ms. Doe's actual complete statement and to question her truthfulness.  This created a credibility bias against Ms. Doe, which contributed significantly to the decision not to prosecute A.M.

19.    Detective Rick's actions in this regard, motivated by his demonstrated personal disbelief of the testimony of teenage female sexual assault victims, followed the accepted narrative that accusations of sexual assault generally are false.  Best estimates of the rate of false accusations of sexual assault made to police are 2-8%,[2] similar to that of other violent crimes.  However, police officers significantly overestimate this rate.  In two published studies of surveys

---

[2] See Lonsway, K., Archambault, J. & Lisak, D (2009), False Reports: Moving Beyond the Issue to Successfully Investigate and Prosecute NonStranger Sexual Assault, The Voice, 3(1), https://www.nsvrc.org/sites/default/files/publications/2018-10/Lisak-False-Reports-Moving-beyond.pdf .

of police officers, the officers estimated that 30% to 50% of sexual assault complaints made to them are false.[3]

20.    In Detective Rick's summary of his verbal interview with Ms. Doe contained in the Incident Report, he deliberately altered and selectively omitted almost all elements of forcible compulsion in Ms. Doe's verbal statements to him, omitted Ms. Doe's attempts to escape, omitted an act of attempted forcible penetration, and used language that implied consent when there was none.  His interpretation of Ms. Doe's statement deliberately and substantially altered the nature and content of the entire series of events in the bathroom in a consistent manner to weaken the case for prosecuting A.M., because he never believed her and therefore took it upon himself to prevent anyone, including the District Attorney, from learning of her personal account of the events.

21.    Ms. Doe believed that her videorecorded police interview on January 7, 2019, would be transcribed and would become her official statement.  However, Detective Rick chose not to do so, and initially only provided to the Allegheny County District Attorney's office Ms. Doe's unfinished, incomplete statement, and then obstructed the District Attorney's office from getting her true complete statement.

22.    Detective Rick deliberately altered Ms. Doe's narrative to falsely portray the rape and sexual assault as being consensual acts and to weaken the case against A.M., when in truth A.M. forcibly and brutally committed these acts of rape and sexual assault against Ms. Doe.

---

[3] See Venema RM, Police Officers' Rape Myth Acceptance: Examiningthe Role of Officer Characteristics, Estimates of False Reporting, and Social Desirability Bias, Violence Vict. 2018 Feb. 1; 33)1):176-200. Doi: 10.1891/0886-6708.VV-D-15-00016. Epub 2017 Dec 1. PMID: 29195520. https://connect.springerpub.com/highwire_display/entity_view/node/87693/full ; and Mennicke A., Anderson D., Oehme K., & Kennedy S. (2014), Law enforcement officers' perception of rape and rape victims: A multimethod study, Violence and Victims, 29(5), 814-827.

23.     Detective Rick's alterations and ommissions, which made the forced sexual acts appear to be consensual, unduly influenced the Allegheny County District Attorney's office to decline to prosecute A.M., and further caused the Allegheny County District Attorney's office to not accept as true Ms. Doe's narrative of the rape and sexual assault.

24.     A transcription of the videorecording of the January 7, 2019 interview made by the Doe family shows that   many statements made and events described by Ms. Doe during the interview were omitted or significantly mischaracterized by Detective Rick in his Incident Report.  For example,

a.     Despite Ms. Doe's graphic description of the violent nature of the forced female-on-male oral sex, Detective Rick characterized it not only as consensual, but also as initiated by Ms. Doe.

b.     In other parts of the Incident Report describing other acts, Detective Rick fails to note Ms. Doe's resistance to the acts, implying consent and omitting the representation of forced compulsion.  This casts doubt on Ms. Doe's narrative that the sexual contact was forcibly inflicted and non-consensual.  Altering Ms. Doe's words in this manner had significant consequences as it related to the Allegheny County District Attorney's decision whether to prosecute A.M. because Detective Rick knew that A.M. had admitted to the act of female-on-male oral sex, which constitutes intercourse under Pennsylvania law, and which would therefore constitute the crime of rape if it were proven to have occurred under forcible compulsion.  Detective Rick's deliberate act of altering the violence and brutality of this act as described by Ms. Doe to imply that it was not only consensual, but also initiated by Ms. Doe, demonstrates that he intentionally acted to prevent A.M. from being prosecuted.

c.      Detective Rick stating that the boy "places her on the toilet..."
mischaracterized the violence of the act.  He intentionally omitted Ms. Doe's words that A.M.
forced her down onto the toilet seat so hard that she had to brace herself with her hands against
the wall to prevent severe injury. Detective Rick's choice of words intentionally removed the
element of forced compulsion.

d.      Detective Rick also omitted from the Incident Report the fact that Ms. Doe
told him that after she put her clothes back on, she grabbed her backpack and attempted to leave,
but A.M. prevented her from escaping.  He also omitted instances of how A.M. used his larger
body size and superior strength to prevent her from getting away, and that she repeatedly
described trying to push A.M. away from her. Detective Rick omitted those statements in order
to imply that the sexual acts were consensual.

e.      Detective Rick also omitted from the Incident Report Ms. Doe's statement
that she was crying during the attack.  She also told Detective Rick that she was forced face first
against the wall, and A.M. violently assaulted her, all while stating repeatedly that she was not
okay and wanted to leave.

f.      Detective Rick also omitted from the Incident Report that Ms. Doe told
him during the interview that A.M. attempted anal penetration.  It is inconceivable that the
failure to mention this act was a mere oversight on the part of Detective Rick.

25.     Defendants repeatedly obstructed the Allegheny County District Attorney's
Office from obtaining a transcript or useable recordings of Ms. Doe's interview on January 7,
2019, where she presented her true and complete statement of the rape and sexual assault, despite
repeated requests by Assistant District Attorney Meghan Black.

11

26.     Detective Rick failed to mention in the Incident Report the significant size, strength and power difference between Ms. Doe and A.M., facts which would reinforce that there was both physical and psychological forcible compulsion employed during the rape and sexual assault.

27.     Detective Rick's investigation into witnesses and other evidence was incomplete and inadequate, and consistently biased with a predisposition of not believing the victim.  Both Ms. Doe and A.M. participated in the PRSD High School JROTC program.  Detective Rick failed to investigate the statement made by another female JROTC student – who had come to assist Ms. Doe following the assault and accompanied her to get help in the school -- that A.M. previously had asked her for nude photos.  It is reasonable to assume that if the only girl interviewed by police, aside from the victim who stated that A.M. raped and sexually assaulted her, stated that A.M. solicited nude photos from her, and all three were cadets in the JROTC program, Detective Rick would, at a minimum, conduct some form of further investigation, such as requesting PRSD records of complaints of a similar nature against A.M.  However, he failed to ask the PRSD for any such records of any other complaints of sexual misconduct against A.M.  Ms. Doe's family was made aware that the PRSD had documentation of at least one report made to them of A.M.'s sexual misconduct that preceded the attack on Ms. Doe on January 7, 2019.  Had defendants sought those records, the information would have added significant credibility to Ms. Doe's allegations.  In addition, Ms. Doe's parents were told by the mother of another of A.M.'s victims that a healthcare professional had reported his sexual misconduct to ChildLine[4],

_____

[4] ChildLine is part of a mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns, and transmit the information quickly to the appropriate investigating agency.

which would have been reported to the NRPD.  So Detective Rick would have had access to that information even without the PRSD's cooperation.

28.     On information and belief, Detective Rick conveyed to the District Attorney's office that Ms. Doe had a boyfriend at the time of the assault, the implication being that Ms. Doe would make a false claim of rape to explain an event of consensual sex with someone other than her boyfriend.  District Attorney Black implied in conversation with Ms. Doe and her family that this fact would be problematic if A.M. were to be prosecuted.  Detective Rick conveyed this information to the Assistant District Attorney Black as a reason to doubt Ms. Doe's truthfullness.

29.     Detective Rick deliberately misidentified Ms. Doe as "Caucasian/Non-Hispanic" because people of color are known to be more at risk for rape and it might reflect negatively on him if such an accusation were not followed up with criminal charges, which itself might invite a review to determine if a more thorough investigation should have been done. Ms. Doe was born in Guatemala; her race is Mayan/Native (Central) American and she is of Hispanic origin. Detective Rick never asked Ms. Doe's parents about her race or ethnicity, but from her appearance alone, with her dark skin and features, Ms. Doe clearly is not Caucasian.  This apparent error could not have been the result of negligence or incompetence, particularly considering that Detective Rick clearly identified JROTC instructor Michael Gasparetto as "Hispanic" in his Incident Report and clearly identified the race and ethnicity of most other individuals mentioned in the report.  Bias against Ms. Doe's ethnicity or race appears to be the only motive for Detective Rick's decision.

30.     Detective Rick's actions in this regard were consistent with the bias on the basis of race, ethnicity and national origin exhibited by the NRPD.  For example, in 2011, the NRPD detained and imprisoned for 11 hours, a young female American citizen of Hispanic descent who

legally immigrated into the United State as an infant, solely based on the groundless belief that

she might be an undocumented alien.  In connection with that case, NRPD agreed to pay a

$175,000 settlement.[5]  In that regard, it is also significant that Pine-Richland Township is 91%

White and only 1% Hispanic.

31.    Defendants' actions were motivated in part by a desire to protect the reputation of

the PRSD.  Pine-Richland is an affluent community with one of the top-rated school districts,

based on academics, in Pennsylvania.  For many years, Detective Rick was the NRPD liaison

with the PRSD, and gave safety presentations to students at district schools.  During Ms. Doe's

interview on January 7, 2019, the day of the attack, Detective Rick stated "I have worked with

that school just about my entire career."  Because Detective Rick has for a long time been

publicly associated with the PRSD and has a close relationship with the PRSD administrators, he

had a vested interest in protecting the reputation of the PRSD.   It would reflect poorly on him

and the district if allegations of a girl being raped in the high school were validated by the

perpetrator being prosecuted.

32.    Defendants' actions were motivated in part by a desire to protect the reputation of

the PRSD High School football team, of which A.M. was a member.  The PRSD High School

football team is revered as a significant cornerstone of pride in the Pine-Richland community.

The football team won PIAA Class 5A state championships in 2017 and 2020, and is always one

of the top high school football teams in Pennsylvania.  The Pine-Richland community is

extremely football-centric.  For example, in 2021, the district's dismissal of the high school

football coach was met with outrage by the community and was covered by local media as a

---

[5] See https://www.aclupa.org/sites/default/files/field_documents/Davila_complaint_1-15-13_0.pdf  and
https://triblive.com/local/pittsburgh-allegheny/northern-regional-police-will-pay-175k-to-settle-lawsuit-
alleging-womans-rights-were-violated/ .

major news stories for months.  Moreover, A.M.'s criminal defense attorney formerly worked as a prosecutor in the General Trial Division of the Allegheny County District Attorney's office, and at the time of the investigation was President of the community's youth football program (the Pine-Richland Youth United Football and Cheer), which is heavily integrated with the high school's football program.  Given the importance of the highly successful high school football team and youth community football program to the Pine-Richland community's identity, it is reasonable to conclude that Detective Rick wanted to avoid creating a stain on the Pine-Richland community and the PRSD football program by prosecuting a member of the high school football team for raping a fellow high school student.  It is also reasonable to conclude that defendants' actions may have been subject to significant influence from powerful people in the community to refuse to prosecute A.M.

33.     As a direct and proximate result of defedants' actions and omissions, Ms. Doe has suffered, is now suffering, and will continue to suffer, among other effects, emotional distress, mental anguish, loss of enjoyment of life, embarassment, humiliation, sleep disturbances (including sleeplessness and insomnia), anxiety, agitation, restlessness, fatigue, exhaustion, impaired concentration, and other non-pecuniary losses.

34.     Ms. Doe's emotional and physical suffering from the trauma caused by the attack has been extreme and persisted for years, not solely due to the assault itself, but also due to defendants' actions and omissions in connection thereto.

a.     In the year immediately following the assault, Ms. Doe required 98 different medical interventions directly related to the severe trauma she suffered, including therapy appointments, psychiatric attention, emergency room visists, and inpatient hospitalizations;

b.     To date, Ms. Doe has required 12 in-patient hospitalizations totaling 55 days;

c.      Ms. Doe suffered from severe anxiety and depression and was eventually diagnosed with Post-Traumatic Stress Disorder (PTSD).  She continues to suffer from insomnia and panic attacks;

d.      Ms. Doe was diagnosed with pelvic floor dysfunction requiring specialized treatment.  Her symptoms included vaginal and rectal burning; pain with urination; pain, difficulty, and blood with bowel movements; incontinence; and persistent deep pelvic ache.

e.      Ms. Doe also was diagnosed with visceral hyperalgesia (increased sensitivity to pain in her internal organs) and functional abdominal pain (chronic stabbing, tearing, and pins and needles), as well as esophageal burning and chronic vomiting requiring hospitalization; and

f.      More than two years after the assault, Ms. Doe was diagnosed with Funtional Neurological Deficit, a condition associated with severe trauma, which manifested with loss of sensation and complete blindness.

35.      Defendants acted and failed to act willfully, maliciously, intentionally, and with reckless disregard for Ms. Doe's rights.

36.      At the time of the investigation conducted by Detective Rick that gives rise to this case, Ms. Doe had a clearly established constitutional right as a crime victim to a fair, adequate, unbiased, and constitutionally-compliant police investigation that did not otherwise violate her constitutional rights.

37.      Beginning with the formation of the NRPD in 2006, the municipal defendants established a long-standing custom and policy of granting virtually unfettered discretion to NRPD police detectives regarding the conduct of investigations of potential sex crimes.

38.      By granting NRPD police detectives such unfettered discretion, the municipal defendants acted with deliberate indifference, and abdicated their responsibility, to train, monitor

and supervise the police detectives to ensure, *inter alia*, that their actions did not violate the constitutional rights of sex crime victims, that their actions comport with best practices in the investigation of sex crimes, that they make investigatory decisions free from bias, prejudice or favor for the potential criminal defendant, and that the decision whether to recommend prosecution is made bases solely on the evidence and free from any outside influence.  The municipal defendants knew, or it should have been obvious to them, that these actions would result from granting the police detectives such unfettered discretion.

39.     As a direct and proximate result of that custom and policy, NRPD police detectives were free to investigate sex crimes without regard to best practices for conducting such investigations[6], to make investigatory decisions based on bias, prejudice and favor for the potential criminal defendant, and to decide whether to recommend prosecution based on factors other than the evidence, all of which allowed them to violate the rights of the victims of the criminal conduct under investigation.

40.     In  conducting the investigation of the sexual assault against Ms. Doe, Detective Rick acted pursuant to that custom and policy and was a final decision-maker with respect to that custom and policy.

41.     As a direct and proximate result of acting pursuant to the custom and policy alleged above, Detective Rick violated Ms. Doe's rights as described herein.

---

[6] See, e.g., guidance from the International Association of Chiefs of Police for investigating sexual assaults, at https://www.theiacp.org/sites/default/files/all/s/SexualAssaultGuidelines.pdf and https://evawintl.org/wp-content/uploads/IACPConceptsandIssuesPaper2017.pdf .  A passage in this guidance is particularly apt in this case with respect to Detective Rick's intentional mischaracterizations of Ms. Doe's statements:

"If the facts obtained from the investigation indicate use of force by the perpetrator, document using language that reflects this … Documentation should reflect a lack of consent.  Avoid wording that implies consent.  For instance, 'he forced his penis into her vagina' denotes lack of consent while 'he had sex with her' implies consensual intercourse."

42.     In fact, the NRPD has admitted that its investigative policies and procedures were outdated.  In a letter to Ms. Doe's father dated February 1, 2022, relating to Detective Rick's investigation of the assault, Chief of Police John A. Sicilia made the following statements:

a.     "…you have brought to our attention some investigative practices which need to be updated."

b.     "…investigative tools and tactics are constantly evolving and we at Northern Regional Police Department acknowledge we need to constantly review our policies and practices to make sure they are up to date."

c.     "We are providing our investigators and all officers with many training opportunities that may not have been available in years past."

## Count I

### *Equal Protection*

43.     Plaintiff incorporates herein by reference as if set forth in full paragraphs 1-42, inclusive, of this Amended Complaint.

44.     Defendants intentionally treated Ms. Doe differently from other victims of rape and sexual assault with respect to the investigation of the crimes committed against her, by disbelieving her consistent statements and acting in a manner to protect A.M. because of her race and ethnicity, and there was no rational basis for the difference in treatment.

45.     Defendants intentionally and irrationally singled Ms. Doe out for dissimilar treatment, when compared to non-Hispanic and adult sexual assault victims.

46.     Defendants' official acts in connection with the investigation of the rape and sexual assault committed against Ms. Doe were motivated by improper considerations and an illegitimate animus toward Ms. Doe, to wit, her race, ethnicity, and age.

47.    Defendants deliberately sought to deprive Ms. Doe of the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution for reasons of a personal nature unrelated to their official duties.

48.    There was no rational basis for the manner in which defendants investigated Ms. Doe's rape and sexual assault, and the decisions they made during the course of the investigation.

49.    Defendants' selective adverse treatment of Ms. Doe was based on her race, ethnicity, age, and other arbitrary factors, such as the wholly irrational desire to protect the reputation of A.M. and the PRSD.

50.    During the investigation, defendants selected particular courses of action in part because of their adverse effects, specifically, that A.M. would not be prosecuted and that Ms. Doe would suffer the emotional distress and related damages alleged above.

51.    Detective Rick's conduct violated clearly established constitutional and statutory rights of which a reasonable police officer would have known.

52.    It was objectively unreasonable for Detective Rick to believe that his actions were lawful during the period of the investigation of the rape and sexaul assault commited against Ms. Doe.

53.    By reason of defendants' violation of Ms. Doe's rights protected by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, Ms. Doe is entitled to all legal and equitable relief available at law.

## Count II

### Due Process

54.    Plaintiff incorporates herein by reference as if set forth in full paragraphs 1-53, inclusive, of this Amended Complaint.

55.     Defendants' actions were an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience and violated Ms. Doe's right to substantive due process.

56.     By reason of defendants' violation of Ms. Doe's rights protected by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, Ms. Doe is entitled to all legal and equitable relief available at law.

## Count III

### *Intentional Infliction of Emotional Distress*

57.     Plaintiff incorporates herein by reference as if set forth in full paragraphs 1-56, inclusive, of this Amended Complaint.

58.     Defendant Rick's conduct as described above was extreme and outrageous.

59.     Defendant Rick's conduct as described above was intentional or reckless, and proximately caused Ms. Doe severe emotional distress and physical injury as described above.

60.     By reason of the above, defendant Rick intentionally inflicted emotional distress upon Ms. Doe, and Ms. Doe is entitled to all legal and equitable relief arising therefrom.

## Count IV

### *Negligent Infliction of Emotional Distress*

61.     Plaintiff incorporates herein by reference as if set forth in full paragraphs 1-60, inclusive, of this Amended Complaint.

62.     Defendants owed Ms. Doe a duty to thoroughly and fairly investigate the rape and sexual assault committed against her.

63.     Defendants, through their actions and omissions as described above, breached said duty.

64.     As a direct and proximate result of defendants' breach of duty, Ms. Doe suffered the damages and injuries alleged above.

65.     Ms. Doe's injuries resulted from a direct physical and emotional impact caused by her knowledge of defendants' incomplete and biased investigation of the rape and sexual assault committed against her.

66.     By reason of the above, defendants negligently inflicted emotional distress upon Ms. Doe, and Ms. Doe is entitled to all legal and equitable relief arising therefrom.

### *Jury Demand*

67.     Ms. Doe hereby demands a trial by jury as to all issues so triable.

### *Prayer for Relief*

Wherefore, Plaintiff, Jane Doe, respectfully prays that the Court:

a.     adjudge, decree and declare that the actions and omissions of defendants complained of herein are violative of her rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution and constitute intentional and negligent infliction of emotional distress;

b.     order defendants to provide appropriate equitable relief to Ms. Doe;

c.     enter judgment in favor of Ms. Doe and against defendants for all available remedies and damages under law and equity, including, but not limited to, compensatory and punitive damages, in amounts to be determined at trial; and

d.      grant such other and further legal and equitable relief as may be found appropriate

and as the Court may deem just or equitable.


_____*s/Robert T Vance Jr*_____

Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 905
Philadelphia PA 19110
215 557 9550 tel / 215 278 7992 fax
rvance@vancelf.com

*Attorney for Jane Doe*