IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | ) |
| | ) No. 2:22-cv-1628 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Robert J. Colville |
| | ) |
| NORTHERN REGIONAL POLICE DEPARTMENT OF ALLEGHENY COUNTY and DETECTIVE SCOTT RICK, | ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 38) filed by Defendants Northern Regional Police Department of Allegheny County ("NRPD") and Detective Scott Rick ("Detective Rick") (collectively, "Defendants"). Defendants seek dismissal with prejudice of the claims set forth against them by Plaintiff Jane Doe in her operative Second Amended Complaint (ECF No. 38) ("SAC"). The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Defendants' Motion has been fully briefed and is ripe for disposition.

**I.    Background**

On June 15, 2023, this matter was temporarily reassigned to the Honorable William S. Stickman IV. *See* ECF No. 30. On July 21, 2023, Judge Stickman issued a Memorandum Opinion (ECF No. 31) and Order (ECF No. 32) addressing Defendants' previous Motion to Dismiss (ECF No. 22), which sought dismissal of the claims set forth in Plaintiff's (First) Amended Complaint (ECF No. 13). Judge Stickman granted the previous motion to dismiss, dismissed Counts I and II of Plaintiff's prior complaint without prejudice, and declined to exercise supplemental jurisdiction

1

over Plaintiff's state law claims (Counts III and IV).  This case was subsequently reassigned to the undersigned on July 24, 2023.  The Court hereby incorporates by reference Judge Stickman's description of the procedural history and factual background of this case, and the Court will supplement that description with newly alleged facts from the SAC where appropriate.  The Court's analysis herein is also consistent with Judge Stickman's legal analysis and conclusions in his Memorandum Opinion, which constitutes the law of the case.  Where appropriate, the Court will utilize Judge Stickman's apt and effective recitation of the law applicable to Plaintiff's claims verbatim.

In the SAC, Plaintiff asserts that she is a Latinx female who was born in Guatemala, and she identifies her race as Mayan/Native (Central) American and asserts that she is of Hispanic origin. SAC ¶¶ 5; 29, ECF No. 38.  Plaintiff asserts equal protection and due process claims against Defendants under 42 U.S.C. § 1983, as well as state law claims for intentional and negligent infliction of emotional distress, arising out of what Plaintiff characterizes as a "shoddy, unprofessional, and inadequate" investigation of an alleged rape and sexual assault committed against Plaintiff when she was a minor student at Pine-Richland High School by a minor male student, A.M.  *Id.* at ¶ 1.  The investigation of this incident was undertaken by Defendants, and the insufficient nature of the investigation ultimately resulted in the failure of the Allegheny County District Attorney's Office to prosecute A.M.  *Id.*  Again, the incident and the investigation into the same are described in Judge Stickman's Memorandum Opinion at ECF No. 31.

With respect to the SAC, Plaintiff asserts that she has "amended existing allegations or added new allegations in the following paragraphs: 9, 13, 15, 19, 20, 21, 27, 30, 34, 37, 39 n.6, 42, 44, 45, 46, and 49."  Br. in Opp'n 2, ECF No. 46.  Those paragraphs set forth the following newly alleged factual allegations relevant to this Court's consideration of Defendants' Motion to Dismiss:

Several months after the incident between Plaintiff and A.M., Detective Rick was informed of a different incident wherein A.M. was alleged to have sexually assaulted another female student on a school bus. SAC ¶ 9, ECF No. 38. Detective Rick did not document or investigate this alleged assault, but instead falsely reported to this subsequent victim's mother that Detective Rick had investigated the assault and that A.M. pled guilty to a criminal charge less severe than assault related to the school bus incident. *Id*.

In Detective Rick's written police report addressing the incident between Plaintiff and A.M., Detective Rick omitted Plaintiff's representations that she physically resisted A.M., that she repeatedly said "No" to A.M. during the course of the sexual assault, and that A.M. responded "No" when Plaintiff asked A.M. to let her go. SAC ¶¶ 13; 15, ECF No. 38. "Detective Rick also substituted words which implied consent and failed to describe the true aggressive nature of A.M. during the attack." *Id*.[1] In his incident report, Detective Rick deliberately and substantially altered Plaintiff's statement as to the nature and content of the incident, and he did so in an effort to weaken the case for prosecuting A.M. "because [Detective Rick] never believed [Plaintiff] and therefore took it upon himself to prevent anyone, including the District Attorney, from learning of [Plaintiff's] personal account of the events." *Id.* at ¶ 20. Detective Rick's actions were "motivated by his demonstrated personal disbelief of the testimony of teenage female sexual assault victims," and "followed the accepted narrative that accusations of sexual assault generally are false." *Id.* at ¶ 19.

Plaintiff alleges in Paragraph 27 that "Detective Rick's investigation into witnesses and other evidence was incomplete and inadequate, and consistently biased with a predisposition of

---

[1] The Court notes that materially similar allegations to those set forth in Paragraphs 13 and 15 were alleged in Plaintiff's prior complaint. *See* ECF No. 13 at ¶¶ 12; 16; 20(b).

not believing the victim."[2] Mem. Op. ¶ 27, ECF No. 38.  In 2011, NRPD detained and imprisoned a young female American citizen of Hispanic descent for eleven hours solely based on the ultimately groundless belief that she might be an undocumented immigrant. *Id.* at ¶ 31.  Pine-Richland Township is 91% White and 1% Hispanic. *Id*.  On February 1, 2022, NRPD Chief of Police John A. Sicilia sent a letter to Plaintiff's father discussing NRPD's investigative techniques and NRPD's efforts to keep such techniques up to date, and further acknowledging that Plaintiff's father had brought to NRPD's attention that certain NRPD investigative practices required an update. *Id.* at ¶ 42.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim

---

[2] Outside of this quoted language, Paragraph 27 is otherwise substantively identical to Paragraph 23 in Plaintiff's prior complaint.

4

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also

5

consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is also true where a plaintiff does not request leave to amend. *See Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

### III. Discussion

#### A. Federal Claims

Plaintiffs § 1983 claims (Counts I and II) invoke different causes of action under the Fourteenth Amendment. Section 1983, enacted as part of the Civil Rights Act of 1871, establishes "a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights." *Burella v. City of Philadelphia,* 501 F.3d 134, 139 (3d Cir. 2007) (quotations omitted). To obtain relief under § 1983, Plaintiff must make a two-prong showing: (1) that she suffered a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted).

##### 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff clarifies that she does not assert in the SAC that she has a general

constitutional right to have A.M. arrested and criminally charged, as a private citizen does not have a legal right to compel government officials to arrest or prosecute another person. *See Town of Castle Rock, Colorado v. Gonzales,* 545 U.S. 748, 767 n.13 (2005) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.")); *see also Graw v. Fantasky,* 68 F. App'x 378, 383 (3d Cir. 2003) (an allegation that authorities failed to investigate and solve a crime, "without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotation omitted)); *Boseski v. N Arlington Municipality,* 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("[Plaintiff] has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). Further, it is not enough for Plaintiff to allege that Detective Rick exercised discretionary investigatory authority in an individualized manner. A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion. In *Engquist v. Oregon Dept. of Agric.,* 553 U.S. 591 (2008), the Supreme Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
> 	Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no

> reason does not invoke the fear of improper government classification.  Such a complaint, rather, challenges the legitimacy of the underlying action itself – the decision to ticket speeders under such circumstances.  Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.  But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action.  It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Engquist*, 553 U.S. at 603-04.[3]

As in her prior complaint, Plaintiff claims that Detective Rick's alleged racial bias against her clouded his investigation.  There is a distinction between the right to force the prosecution of a case and the right of access to judicial procedures, like a criminal investigation, to redress an alleged wrong.  It is certainly true that police officers cannot discriminate on the basis of an alleged victim's race.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.").  The "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection." *Hilton v. City of Wheeling,* 209 F.3d 1005, 1007 (7th Cir. 2000).  Thus, a claim that police services were administered in a discriminatory manner and denied a victim protection is a viable equal protection claim.

---

[3] As noted by Judge Stickman, while the issue in *Engquist* involved an equal protection claim in the context of a public employment action, this analysis has been applied to equal protection claims in other factual settings as well.  For example, the United States Court of Appeals for the Ninth Circuit found that a victim of a traffic collision pleaded a colorable equal protection violation where she alleged that officers failed to arrest or even investigate the at-fault driver. *Elliot-Park v. Manglona,* 592 F.3d 1003 (9th Cir. 2010).  While the Ninth Circuit agreed that "individuals don't have a constitutional right to have police officers arrest others who have victimized them," *id* at 1006, and that the "officers' discretion in deciding whom to arrest is certainly broad," that discretion "cannot be exercised in a racially discriminatory fashion." *Id.*  The Ninth Circuit found that officers were not permitted to give the drunk driver a "pass" if the reason behind it was racial bias in favor of the driver and against the plaintiff. *Id.*

Judge Stickman found that Plaintiff's prior complaint failed to set forth sufficiently specific factual allegations to support a claim for alleged discriminatory failure to adequately investigate Plaintiff's criminal complaint against A.M. based upon Plaintiff's ethnicity or race. Mem. Op. 7, ECF No. 31. He further found that she failed to articulate a "plausible case-specific account of intentional discrimination but merely pled the elements of an equal protection claim clothed in threadbare allegations of supporting fact." *Id.* at 7-8. More specifically, he explained:

> [The] Amended Complaint . . . is bereft of facts regarding exactly how Plaintiff was targeted or intentionally treated differently during the police investigation than other sexual assault victims on account of her ethnicity or race. She has identified no comparative cases and has failed to come forth with any specific facts as to how the alleged inadequacies in the investigation were based on her ethnicity or race. There is no indication that Defendants ever stated that they would not adequately investigate Plaintiff's allegations because they thought she was undeserving of equal law enforcement protection due to her ethnicity or race. No facts set forth in the Amended Complaint raise an inference that Defendants' investigatory decisions were motivated by discriminatory animus.
>
> Law enforcement decisions are highly discretionary and oftentimes require an officer to assess multiple variables. As the Supreme Court noted in *Engquist,* "[i]t is no proper to challenge what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist,* 553 U.S. at 604. Plaintiff's equal protection claim amounts to nothing more than a generic claim that Detective Rick's investigation was inadequate and, therefore, it must have been motivated by some unalleged personal animus toward her "ethnicity or race." Plaintiff does not have to prove her case in her complaint, but she cannot baldly plead that Detective Rick's allegedly faulty investigation was based on ethnicity or race and offer no concrete basis – beyond her own race – to reach that conclusion.
>
> There is no right to an adequate police investigation and Defendants had no constitutional duty to conform their investigation to the dictates or desires of Plaintiff and her parents. *See e.g., Khaled v. Dearborn Heights Police Dep'tt,* 711 F. App'x 766 (6th Cir. 2017) (finding officer's alleged failure to adequately investigate allegation that neighbor assaulted Arab-American's daughters was not actionable in family's § 1983 action against officer, and finding that officer's alleged refusal to accept daughters' report of assault by their neighbor was not actionable as discrimination).[4] Plaintiff's equal

---

[4] The Allegheny County District Attorney's Office, for reasons not fully set forth in the Amended Complaint, decided not to file criminal charges against A.M. Plaintiff has not brought a claim against the Allegheny County District

> protection claim is based solely on her own conclusory and unsupported allegations. She has failed to set forth facts showing that Defendants purposely failed to properly investigate her allegations against A.M. because of her ethnicity or race. The alleged misidentification of Plaintiff on one Incident Report as "Caucasian/Non-Hispanic" is insufficient to establish a plausible inference of Defendants' discriminatory intent. Because she has failed to state facts that constitute infringement of a protected right, Plaintiff does not have a cognizable § 1983 claim based on the failure to adequately investigate. Count I must be dismissed.

*Id.* at 9-11 (footnote in original).

As noted by Judge Stickman, proof of discriminatory intent or purpose is required to demonstrate an ethnicity- or race- based violation of the equal protection clause, which is what Plaintiff has asserted against Defendants. Thus, Plaintiff is required to articulate specific, non-conclusory facts demonstrating discriminatory intent to survive a motion to dismiss. This, again, she fails to do in the SAC.

While Plaintiff has attempted to bolster certain of her prior allegations, they remain, almost entirely, substantively identical to the allegations that she asserted in her prior complaint. Plaintiff points to Paragraph 44 as a paragraph she has amended, and that Paragraph provides:

> Defendants intentionally treated Ms. Doe differently from other victims of rape and sexual assault with respect to the investigation of the crimes committed against her, *by disbelieving her consistent statements and acting in a manner to protect A.M. because of her race and ethnicity*, and there was no rational basis for the difference in treatment.

SAC ¶ 44, ECF No. 38 (new averment in SAC emphasized). In Paragraph 37 of the prior complaint, Plaintiff provided:

> Defendants intentionally treated Ms. Doe differently from other victims of rape and sexual assault with respect to the investigation of the crimes committed against her, and there was no rational basis for the difference in treatment.

---

Attorney's Office that it lacked an ample basis for its decision not to prosecute or that its decision was discriminatory or arbitrary. In her Amended Complaint, Plaintiff has presented no facts that the ultimate decision by the prosecutor would have been different if Defendants allegedly had not treated her in a discriminatory fashion during the investigative process. Plaintiff's equal protection claim, based entirely on intermediate steps in the decision-making process, is dubious where the ultimate result is not alleged to be discriminatory.

ECF No. 13 at ¶ 37. The addition of the clause emphasized above in Paragraph 44 does not remedy the issue thoroughly addressed and noted in Judge Stickman's Memorandum Order, i.e., that Plaintiff's equal protection claim amounts to nothing more than a generic claim that Detective Rick's investigation was inadequate and, therefore, must have been motivated by personal animus toward Plaintiff's ethnicity or race.[5]

In the SAC, Plaintiff alleges the following facts for the first time: (1) that, following the incident involving Plaintiff and A.M., Detective Rick failed to adequately document or investigate a different sexual assault allegation involving A.M. and a different victim;[6] (2) that, in 2011, NRPD unlawfully detained a young woman of Hispanic descent for eleven hours on the basis of a mistaken belief that she might be an undocumented immigrant;[7] (3) Detective Rick deliberately and substantially altered Plaintiff's statement in his incident report as to the nature and content of the incident, and he did so in an effort to weaken the case for prosecuting A.M. because he never believed Plaintiff and took it upon himself to prevent anyone, including the District Attorney, from learning of Plaintiff's personal account of the events; and (4) that, in February of 2022, Plaintiff's father received a letter from the NRPD chief of police acknowledging limitations in prior investigative practices at NRPD. The remaining allegations in the SAC otherwise reallege allegations Judge Stickman has already addressed.

The first, third, and fourth allegations again speak only to the purported inadequacy of Detective Rick's investigation, and, importantly, in no way indicate that discriminatory animus

---

[5] Plaintiff sets forth similar conclusory allegations in Paragraphs 45, 46, and 49, including otherwise factually unsupported allegations of age discrimination that are not addressed in Plaintiff's Brief in Opposition to the Motion to Dismiss.

[6] Plaintiff does not identify the race or ethnicity of this other victim.

[7] The article cited in the SAC indicates that this young woman was approximately 25 or 26 years old in 2011.

11

was the basis for Detective Rick's disbelief of Plaintiff's criminal complaint against A.M. or for Defendants' failure to properly investigate Plaintiff's criminal complaint.[8] As with her prior complaint, Plaintiff's allegations merely tend to establish that Detective Rick, in Plaintiff's estimation, inadequately exercised discretionary investigatory authority in an individualized manner. The allegations as to the 2011 incident involving the detention of a young woman of Hispanic descent, while certainly troubling, are, in the Court's estimation, so attenuated that the incident cannot serve as a basis to infer that Defendants in this case failed to properly investigate Plaintiff's criminal complaint of rape and sexual assault against A.M. due to Plaintiff's race or ethnicity. The event took place seven or eight years before Detective Rick's investigation, did not involve allegations of sexual assault or the failure to investigate the same, and, given that Plaintiff has not alleged Detective Rick's involvement and the fact that the article cited by Plaintiff does not mention Detective Rick, seemingly did not involve Detective Rick. The Court finds that the same is not a sufficient "comparative case" such that the Court could infer discriminatory intent on either Detective Rick's or NRPD's part in this particular case. For these reasons, the Court finds that Plaintiff fails to allege facts sufficient to support a finding of discriminatory motive or that a similarly situated person in an unprotected class was treated differently. Count I will be dismissed.

### 2. Due Process

---

[8] It bears noting that the SAC itself offers other, notably non-conclusory and non-discriminatory, possible explanations for Defendants' actions other than Plaintiff's ethnicity or race, including Detective Rick's desire to protect his own reputation as a police officer closely associated with the school district, as well as his desire to protect the reputation of the school district itself, the local community, and A.M., a member of the school district's successful football team, which Plaintiff asserts "is revered as a significant cornerstone of pride in the Pine-Richland community." SAC ¶¶ 31-32, ECF No. 38; *see also id.* at ¶ 49 ("Defendants' selective adverse treatment of Ms. Doe was based on her race, ethnicity, age, and other arbitrary factors, such as the wholly irrational desire to protect the reputation of A.M. and the PRSD."). She also suggests that "[i]t is also reasonable to conclude that defendants' actions may have been subject to significant influence from powerful people in the community to refuse to prosecute A.M." *Id.* at ¶ 32. While each of these explanations would be troubling, if true, they do not implicate Plaintiff's race or ethnicity as a basis for the alleged inadequate investigation conducted by Detective Rick and NRPD.

The substantive due process clause of the Fourteenth Amendment protects certain individual liberty interests against "governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986). It protects against the arbitrary exercise of government power. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 845-46 (1998). However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (citing *Collins v. Harker Heights,* 503 U.S. 115, 129 (1992)). To establish a substantive due process violation, a plaintiff must establish that the government official's conduct "shocks the conscience." *Id.* at 846; *see also Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3d Cir. 1994). "This standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." *Blain v. Twp. of Radnor,* 167 F. App'x 330 (3d Cir. 2006) (citing *Lewis,* 523 U.S. at 847 n. 8). What qualifies as conscience-shocking conduct depends upon the unique factual circumstances of each case. *Lewis,* 523 U.S. at 850. However, as the Supreme Court has explained:

> [W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. In *Paul* v. *Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-1161, 47 L.Ed.2d 405 (1976), for example, we explained that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and in *Daniels* v. *Williams,* 474 U.S., at 332 [ ], we reaffirmed the point that "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."

*Lewis,* 523 U.S. at 848.

The due process clause is primarily concerned with preventing government from abusing its power or employing it as an instrument of oppression. It is not generally used to impose affirmative obligations on government actors to provide aid to citizens or to provide citizens with a constitutionally guaranteed right to receive these services. *DeShaney*, 489 U.S. at 195-96.

13

Because the due process clause does not guarantee a right to government aid, it does not generally provide a cause of action when that aid is rendered inadequately. While government officials may be legally required to investigate and prosecute crimes, the duty is performed for the benefit of the public generally and is not owed to any one member of the public individually.

In dismissing the substantive due process claim set forth in Plaintiff's prior complaint, Judge Stickman explained:

> Here, it is unclear what government action Plaintiff is alleging shocks the conscience to the point of being an actionable substantive due process claim. All she has pled is that: "Defendants' actions were an egregious, outrageous, and arbitrary assertion of government authority that shocked the conscience and violated Ms. Doe's right to substantive due process." She contends in response to Defendants' motion "that defendants' actions in conducting a rape and sexual assault investigation based on bias and prejudice 'shock the conscience,' regardless of whether a rape and sexual assault investigation free from bias and prejudice would or would not have resulted in prosecution of A.M." Plaintiff's conclusory assertions are devoid of any factual development and she fails to identify the basis for a substantive due process claim. As noted in the previous section, Plaintiff has come forth with no specific facts as to Defendants' "bias and prejudice." Without such facts, her allegations of negligence as to the police investigation – e.g., failing to follow up on additional leads, improperly identifying Plaintiff as "Caucasian/Non-Hispanic" on the Incident Report, not having Plaintiff's videorecorded interview transcribed – do not violate due process. There is simply no constitutional right to have an investigation by police conducted as one wishes. Courts have repeatedly recognized that inadequate investigation is not sufficient to state a civil rights claim unless there is some other recognized constitutional right involved. Plaintiff has merely recast her equal protection claim as a substantive due process claim, which the Court will not countenance. Count II will be dismissed.

Mem. Op. 12-13, ECF No. 31 (citations omitted).

Plaintiff's allegations and argument in support of her due process claim remain substantively unchanged in the SAC and her Brief in Opposition to the Motion to Dismiss, respectively. *See* Br. in Opp'n 5, ECF No. 46 (reiterating her prior argument "that defendants' actions in conducting a rape and sexual assault investigation based on bias and prejudice 'shock the conscience,' regardless of whether a rape and sexual assault investigation free from bias and

prejudice would or would not have resulted in prosecution of A.M."). Plaintiff has, again, recast her equal protection claim as a substantive due process claim. Because her equal protection claim fails, so to must her substantive due process claim. For the same reasons discussed in Judge Stickman's Memorandum Opinion, the Court will dismiss Count II.

### 3. *Monell* Liability

The liability of a municipality under § 1983 is governed by *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). A municipal entity, such as NRPD, cannot be held liable pursuant to § 1983 under the theory of *respondeat superior. Id.* at 691. "[I]t is when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Municipal entities may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see id.,* (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (quoting *Adickes v. SH Kress & Co.,* 398 U.S. 144, 167- 68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik,* 485 U.S. at 123; *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 400 (1997); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388-89 (1989).

In finding that any claim against NRPD brought under *Monell* failed as a matter of law, Judge Stickman explained:

> There must be a violation of Plaintiff's constitutional rights for a claim under *Monell* against the Northern Regional Police Department of Allegheny County to proceed. *Johnson v. City of Phila.*, 975 F.3d 394, 403 n.13 (3d Cir. 2020). As noted in the previous sections, Plaintiff has failed to allege a constitutional violation. Thus, her derivative *Monell* claim fails as a matter of law. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").
>
> The Court would further note that Plaintiff's conclusory allegations are insufficient to state a claim for municipal liability. She must assert more than the mere formulaic recitations of the existence of unlawful policies, practices, conducts, or habits. Her Amended Complaint is devoid of any allegations identifying a specific policy or custom of the Northern Regional Police Department of Allegheny County, any specific regulations, or any officially adopted or promulgated decisions, that the execution of which allegedly led to the "shoddy" police investigation about which Plaintiff is complaining. Plaintiff's claim, based on the investigation of only her criminal complaint against A.M., is insufficient to establish that a policy or custom founded upon practices of sufficient duration, frequency, and consistency has become a traditional method of carrying out policy. To the extent Plaintiff's claim is based on an allegation that law enforcement personnel who investigate sexual assaults are untrained and fundamentally biased against sexual assault victims, her conclusory allegations are insufficient to plausibly show any actual deficiency in training reflecting a deliberate indifference to her constitutional rights. *See Harris*, 489 U.S. at 391 (explaining that allegations that "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" are insufficient to state a *Monell* claim based on failure to train). Plaintiff's *Monell* claim fails as a matter of law.

Mem. Op. 14-15, ECF No. 31 (footnote omitted).

Plaintiff does not set forth new allegations in support of a claim under *Monell* that were not at issue when Judge Stickman issued his Memorandum Opinion. Again, she has not set forth allegations to support an underlying constitutional violation or a widespread NRPD practice, and again relies on formulaic recitations of the existence of unlawful policies, practices, conducts, or habits to support any *Monell* claim. For the same reasons set forth in Judge Stickman's Memorandum Opinion, the Court concludes that any *Monell* claim against NRPD fails as a matter of law.

The Court notes that, in issuing this decision, it in no way intends to diminish or discount the disturbing allegations set forth in the Second Amended Complaint as to the incident that Plaintiff alleges occurred between Plaintiff and A.M. and the seemingly severe and persistent ramifications experienced by Plaintiff as a result. That said, the requirements for stating a claim under Section 1983 are plain and exacting. Following an opportunity to amend, Plaintiff has again come up short of stating a claim for a violation of her constitutional rights against either Defendant. Judge Stickman's prior Memorandum Order put Plaintiff on full notice of the deficiencies in her prior pleading, and she failed to cure those deficiencies in the SAC. Accordingly, the Court now finds that any future amendment of Plaintiff's federal claims would be futile, and Counts I and II will be dismissed with prejudice.

### B. State Law Claims

The Court has dismissed all claims over which it had original jurisdiction, and it declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over any remaining state law claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). A district court has discretion to remand a removed case involving pendent claims to state court where it determines that "retaining jurisdiction over the case would be inappropriate." *Carnegie-Mellon*, 484 U.S. at 357.

The Court finds that the factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. With respect to judicial economy and convenience, the Court notes

17

that this case is at a very early stage of the litigation process, as Defendants have not yet answered the SAC and deadlines for discovery have yet to be scheduled. *See Carnegie-Mellon*, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). Accordingly, the Court finds that the factors of judicial economy and convenience weigh in favor of declining to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Court further finds that the factors of fairness and comity weigh heavily in favor of declining to exercise supplemental jurisdiction in this matter. State courts have a strong interest in applying state law, and a remand of this action will ensure that the parties receive a "surer-footed reading" of applicable state law with respect to Plaintiff's state law claims. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." (quoting *Gibbs*, 383 U.S. at 726)); *see also Carnegie-Mellon*, 484 U.S. at 349-50 (explaining that the Supreme Court in *Gibbs* "recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties."); *Boyd v. 320 Mt. Prospect LLC*, No. 2:18-CV-8770-SDW-SCM, 2020 WL 3492053, at *4 (D.N.J. May 19, 2020), *report and recommendation adopted*, No. 18-CV-8770 (SDW) (SCM), 2020 WL 3489675 (D.N.J. June 26, 2020) ("The state has a strong interest in interpreting issues of state law, and the Superior Court of New Jersey has a much greater interest in adjudicating state law claims than does this Court.").

Having considered the relevant factors, the Court will remand Plaintiff's remaining state law claims to the Court of Common Pleas of Allegheny County, Pennsylvania for all further

proceedings. Accordingly, the Court has not addressed the merits of the claims set forth at Counts III and IV of the SAC herein.

### IV. Conclusion

For the reasons discussed above, the Court will grant the Motion to Dismiss as to Counts I and II of the Second Amended Complaint, and the claims set forth therein will be dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and it will thus remand Plaintiff's remaining claims to the Court of Common Pleas of Allegheny County, Pennsylvania for all further proceedings. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J.Colville*_____
Robert J. Colville
United States District Judge

DATED: July 11, 2024

cc: All counsel of record